19-1445-cr
United States v. Carroll

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 25th day of March, two thousand twenty one.

Present:     ROSEMARY S. POOLER,
             RICHARD J. SULLIVAN,
             MICHAEL H. PARK,
                      *Circuit Judges*.

———————————————————————————————

UNITED STATES OF AMERICA,

             *Appellee*,

             v.                                          19-1445-cr

CHANJU CARROLL, AKA CHANJU CARROL, AKA CHOO,

             *Defendant-Appellant*.[1]

———————————————————————————————

Appearing for Appellant:     Andrew M. St. Laurent, Harris St. Laurent & Wechsler LLP, New York, N.Y.

Appearing for Appellee:      Mathew Andrews, Assistant United States Attorney (George Turner, Danielle R. Sassoon, Assistant United States Attorneys, *on the brief*), *for* Audrey Strauss, United States Attorney for the Southern District of New York, New York, N.Y.

Appeal from the United States District Court for the Southern District of New York (Seibel, *J.*).

———————————————————

[1] The Clerk of the Court is directed to amend the caption as above.

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED**.

Chanju Carroll appeals from the May 10, 2019 judgment of conviction entered in the United States District Court for the Southern District of New York (Seibel, *J.*) following a jury trial on one count of conspiracy to distribute 28 grams or more of cocaine base and 500 grams or more of cocaine in violation of 21 U.S.C. § 841(b)(1)(B). We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

Carroll first challenges the expert testimony offered by the government's expert witness, John Kerwick, an investigator at the Putnam County Sheriff's Office and a task force officer at the Drug Enforcement Administration. "Because the district court has broad discretion regarding the admission of expert testimony, we will sustain the district court's admission of the testimony unless it was manifestly erroneous." *United States v. Dukagjini*, 326 F.3d 45, 52 (2d Cir. 2003) (internal quotation marks omitted). Federal Rule of Evidence 702 allows an expert to testify if the expert's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). The expert may offer opinion testimony if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Dukagjini*, 326 F.3d at 51 n.2 (quoting Fed. R. Evid. 702 (2000)) (emphasis omitted).

As Carroll readily acknowledges, "we have consistently upheld the use of expert testimony to explain both the operations of drug dealers and the meaning of coded conversations about drugs." *Id.* at 52. However, district courts are charged with careful oversight of such testimony, as it "may unfairly provide the government with an additional summation by having the expert interpret the evidence, and may come dangerously close to usurping the jury's function." *Id.* at 54 (internal quotation marks and alteration omitted). Carroll argues that Kerwick "clearly exceeded the proper scope of expert testimony by testifying about matter within the scope of understanding of lay jurors; by testifying in such a way as to fill in gaps in the government's case; and by testifying not only as to the meaning of particular words but as to interpretations of whole conversations." Appellant's Br. at 27.

We disagree. What Carroll characterizes as within the ken of lay jurors are subjects and vocabulary that a lay juror may not know are used in the narcotics trade. "[I]t is well established that the operations of narcotics dealers are a proper subject for expert testimony under Fed. R. Evid. 702." *United States v. Nersesian*, 824 F.2d 1294, 1308 (2d Cir. 1987). This court has found that "[t]estimony about the weight, purity, dosages, and prices of cocaine clearly relates to knowledge beyond the ken of the average juror." *United States v. Tapia-Ortiz*, 23 F.3d 738, 741 (2d Cir. 1994). Kerwick was not the case agent, and his testimony did not venture into legal conclusions that are the jury's provenance. The district court did not abuse its discretion in permitting Kerwick's expert testimony.

Carroll also argues that the district court abused its discretion in discharging Juror Number 6 on the second day of jury deliberations. Juror Number 6 reported that he was

2

struggling with deliberations because he had a "very negative" experience with law enforcement as a teenager. App'x at 736. He told the court, "I thought this wouldn't affect me, . . . . [a]nd it's coming to bear. It's just affected me with this case." *Id.*. The negative experience was being wrongly arrested "for fireworks." *Id.* The charges were dismissed, and the case placed under seal. The district court asked the juror, "[D]o you feel now that you don't think you can continue because you don't think you can be fair or because emotionally it's too hard on you or something else?" App'x at 737. The juror answered, "I'm not content with the process. You said not to mention anything in there, so --." *Id.* Juror Number 6 stated he "cannot conclude this case" and that he "want[s] to be fair," but it "will be difficult" because "this particular incident . . . . it's weighing on me." App'x at 737-38. Although Juror Number 6 told the district court that it would be "very difficult" for him to be fair and impartial, because "what happened was pretty traumatic." App'x at 740-41. Juror Number 6 told the district court he would try to be fair and returned to deliberations.

Ninety minutes later, the jury foreperson sent a note stating "[o]ne juror states that he is unable to be fair and impartial with regard to this case." App'x at 757. When the district court asked the juror in question to come to the courtroom, Juror Number 6 appeared. The district court asked, "You're trying [to be fair], but not succeeding?," to which Juror Number 6 replied, "Yeah." App'x at 758. The district court told the juror that if he could not be fair and impartial, he would need to be excused. At a sidebar, defense counsel objected to dismissing the juror and asked for a more complete record, but the district court stated, "I bent over backwards the first time. . . . I don't think grilling him any further serves any purpose. Arguably, I shouldn't have even let[] him go back in because he was not unequivocal that he could be fair. Now he is unequivocal that he can't be fair." App'x at 758-59. The district court stated that the juror "seems sincere," "seems like he's trying," and "seem[s] sorrowful about saying [that] he can't be fair and impartial." App'x at 759. After additional questioning, during which the juror again confirmed that he could not be fair and impartial, the district court discharged him. The next day, the district court replaced Juror Number 6 with an alternate juror and instructed the jury to begin deliberations again. The jury returned a guilty verdict later that day.

Carroll argues that Juror Number 6 was dismissed only after "he had arguably raised concerns about the quality of the evidence." Appellant's Br. at 37. We review a district court's decision to dismiss a jury for cause under Federal Rule of Criminal Procedure 23(b) for abuse of discretion. *United States v. Spruill*, 808 F.3d 585, 592 (2d Cir. 2015). Carroll relies on *United States v. Thomas* for the proposition that "if the record evidence discloses any possibility that the request to discharge stems from the juror's view of the sufficiency of the government's evidence, the court must deny the request." 116 F.3d 606, 621-22 (2d Cir. 1997) (emphasis omitted).

Carroll argues that Juror Number 6's statements indicate that "disagreements between his and the other jurors' view of the evidence may have underlaid his request to be discharged." Appellant's Br. at 38. Carroll points to two statements by Juror Number 6: "What I can do is look at evidence and examine the evidence, but like everyone does. They're examining the evidence based on what their personal experiences have been in life, and that's all I can do and that's all I can offer," App'x at 744, and "What I'm saying is that, if I may speak, your Honor, my evaluation of the case may be vastly different . . . ." App'x at 745. Read in the context of Juror Number 6's colloquy with the court, the statements merely indicate that Juror Number 6

3

sought discharge because he thought he would be biased in light of his prior life experience. Such partiality is, under our case law, "just cause" to dismiss the juror. *See Thomas*, 116 F.3d at 620-21; *see also id.* at 613 ("Rule 23(b) dismissal have been upheld repeatedly in cases where the trial court found that a juror was no longer capable of rendering an impartial verdict.").

We have considered the remainder of Carroll's arguments and find them to be without merit. Accordingly, the judgment of the district court hereby is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk